**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

| | |
|---|---|
| James Hull, | Civil No. 05-1276 DWF/AJB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| | **ON MOTION TO DISMISS** |
| Daniel Mohs and The Stokely Group. LLC, | |
| Defendants. | |

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. [Docket No. 4]. Defendants contend that this action does not meet the $75,000 amount in controversy requirement for the exercise of federal diversity jurisdiction. Plaintiff has responded by filing a motion in opposition to plaintiff's motion to dismiss [Docket No. 9], along with written argument in opposition to the defendants' motion. In addition, plaintiff has filed a motion to amend the complaint [Docket No. 24] seeking to thereby correct alleged deficiencies in the initial pleading. Plaintiff is a federal prisoner, presently incarcerated at FMC–Rochester, Minnesota. Defendant Daniel Mohs is a Missouri attorney who was retained to represent plaintiff in a criminal appeal, and defendant Stokely Group, LLC was the law firm to which Mr. Mohs belonged at times pertinent to this case. The complaint alleges breach of contract, fraud, fiduciary breach, deprivation of honest services, and infliction of emotional distress, all arising out of defendant Mohs' acceptance of a fee retainer to represent plaintiff in a federal criminal appeal, and the defendant's alleged failure to prosecute the appeal. Plaintiff seeks compensatory and punitive damages. The case has been referred to the undersigned United States Magistrate Judge for

report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Plaintiff is pro se. Defendants are represented by Barry A. O'Neil, Esq.

**Background and Claims**

Plaintiff James Hull was convicted on federal drug charges by a jury in United States District Court for the District of Minnesota in August 2003.[1] He is presently incarcerated at FMC–Rochester. Plaintiff alleges that he paid the amount of $24,000 to Daniel Mohs, a Missouri attorney and member of the co-defendant firm Stokely Group LLC, to represent him in an appeal of his criminal conviction to the United States Court of Appeals for the Eighth Circuit, but Mr. Mohs did not complete the appeal as plaintiff had anticipated. Mr. Hull learned of the lawyer's apparent inaction and was able to obtain substitute appellate counsel who thereafter filed a timely, albeit unsuccessful, appeal of the conviction and sentence.[2] However, the $24,000 retainer, along with an additional $4,118.40 paid to Mohs, were not returned to him, and an additional $925.00 in fees was incurred to recover the legal file. Plaintiff claims a total of $29,043.40 in damages arising directly from attorney Mohs failure to prosecute the appeal. In addition, plaintiff has paid or owes substitute appellate counsel, Michael Gross, a total amount of $35,268.88[3] which he is also claiming as damages in this action.

---

[1] United States v. Hull, District of Minnesota Criminal File No. 02-220 JMR/FLN.

[2] United States v. Hull, 419 F.3d 762 (8th Cir. 2005).

[3] In his opposition to dismissal plaintiff provides the figure of $29,754.20 in fees incurred due to the hiring of Michael Gross. Plaintiff thereafter submitted a Supplemental Proof of Damages in which he presents an additional attorney billing for $5,514.68.

As his causes of action in this matter plaintiff is alleging breach of contract, fraud, fiduciary breach, deprivation of honest services, and infliction of emotional distress. For relief with respect to each cause of action he seeks: "a) [a]ctual damages of $24,000; b) compensatory damages in excess of $30,000.00; c) treble damages in excess of $90,000.00; and d) exemplary and punitive [damages] with prejudgment interest, inclusive of any equitable relief that is fair and just."[4] Defendant now moves to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), arguing that federal subject matter jurisdiction does not exist because the case does not involve the $75,000 amount in controversy that is necessary to proceed on the basis of diversity jurisdiction. Plaintiff opposes the motion, asserting that the total claim, including compensatory damages, treble damages, and other punitive damages, are sufficient to reach the amount in controversy limit.

**Discussion**

As a preliminary matter defendants acknowledge that they are residents of Missouri, but they contend that plaintiff has failed to properly establish subject matter jurisdiction because he did not allege his own domicile prior to incarceration. However, plaintiff has now asserted[5] that he has been a resident of Minnesota since 2002,[6] and was a resident of California prior to that time, and that his residence is therefore diverse from defendants. There is no evidence in the record to suggest that

---

[4] Complaint, pp. 7.

[5] Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss, pp. 1-2.

[6] Plaintiff was ordered detained immediately following his conviction on August 25, 2003, and he was sentenced to prison in February 2004. Defendants' Memorandum in Support of Motion to Dismiss, Exh. A, Criminal Docket for Case #: 0:02-cr-00220-JMR-FLN

plaintiff has been domiciled in Missouri during any time pertinent to this lawsuit. Under these circumstances the exercise of federal subject matter jurisdiction is not improper on domicile location alone. 28 U.S.C. §1332(a)(1).

**Amount in Controversy.** Pursuant to 28 U.S.C. §1332(a), the district courts have original jurisdiction only in civil actions in which the matter in controversy exceeds the sum or value of $75,000. Defendants contend that the amount of damages at issue in this case has not been alleged with certainty sufficient to establish that the jurisdictional threshold is met. The complaint initially states that plaintiff is seeking to recovery monetary damages in excess of $150,000, but concrete damages amounts are alleged only with respect to total amounts paid to defendant Daniel Mohs, i.e. $29,043.40, and amounts paid to substitute appellate counsel, Michael Gross, i.e. $35,268.88. These monetary claims represent damages for each of the various causes of action, particularly breach of contract and breach of fiduciary duty, but are clearly compensatory in nature and any overlap or duplication in a jury award would be a double (or more) recovery. In that regard the grounds for compensatory damages are alternative in nature and plaintiff would not be entitled relief on more than one of the claims. Furthermore, the separate damages amounts that are asserted are also alternative in nature and plaintiff would likely be required to elect his remedy prior to trial or before instructions are given to the jury.

**Breach of Contract.** As his first cause of action plaintiff asserts breach of contract. He alleges $24,000 "actual" damages on this claim, and further seeks $30,000[7] in "compensatory" damages, along with treble, exemplary, and punitive damages. Though defendants do not contend that

---

[7] Each of these damages figures has increased has previously discussed in this report.

plaintiff fails as a matter of law to state a claim for breach of contract, this claim on its face does not constitute a claim for more than the $29,043.40 total amount paid the defendants, a sum which might arguably be supplemented by consequential damages consisting of the difference between fees and expenses paid to the substitute attorney and the payments to defendants.  As discussed above, plaintiff is not entitled to recovery of payments made to both attorneys and his damages for mere breach of contract do not exceed $35,268.88.

**Fraudulent Misrepresentation.**  The second count in complaint alleges that defendants materially misrepresented their resources, skill, competence and availability in inducing him to enter into a contract for their services, and that he relied upon defendant's negligent misrepresentations.  Again, plaintiff seeks $24,000 in "actual" damages, $30,000 in "compensatory" damages, as well as treble, exemplary, and punitive damages.  Defendants argue that the fraud allegation is entirely conclusory and fails to allege any specific representation with the particularity required under Fed. R. Civ. P. 9(b).  Therefore, the fraud claim is inadequate to establish a basis for damages, especially damages which satisfy the amount in controversy requirement for federal diversity jurisdiction.  In any event, defendants contend that plaintiff is entitled to no more than out-of pocket losses on a negligent misrepresentation claim and that this amount is no greater than the damages available on breach of contract or breach of fiduciary duty claims.  Plaintiff insists that the complaint meets the particularity requirements of Rule 9(b), but alternatively asks that he be permitted to amend the complaint if the court determines that defendants are prejudiced as to their ability to answer the present pleading.

While the court agrees that the complaint in this matter inadequately states the factual particulars necessary to establish a fraud claim, the court finds that with respect to the jurisdictional issue that is now under consideration the plaintiff has not alleged any basis for misrepresentation damages above and beyond his out-of-pocket expenses and that dismissal of the federal action, rather than granting leave to amend the complaint, is appropriate in this instance. The out-of-pocket rule permits the plaintiff to recover damages which are the natural and proximate loss resulting from reliance on a misrepresentation. Lewis v. Citizens Agency of Madelia, Inc., 235 N.W.2d 831, 835 (Minn. 1975). Out-of-pocket loss is typically measured as the difference between that which the plaintiff partied with and that which he received. W.K.T. Distributing Co. v. Sharp Electronics Corp., 746 F.2d 1333, 1337 (8th Cir. 1984)(citing Lewis at 835). Although a narrow exception to the out-of-pocket rule may be applied where necessary to return the plaintiff to where he would be but for the misrepresentation, id., there are no consequential economic damages alleged in the present instance that would support application of any exception or variant of the out-of-pocket rule. As discussed above with regard to breach of contract damages, plaintiff's out-of-pocket loss is no greater than $35,268.88 and the damages are insufficient to satisfy the amount in controversy minimum limit for jurisdiction.

**Breach of Fiduciary Duty.** The third cause of action asserted in the complaint is a claim for breach of fiduciary duty. Plaintiff therein states that defendants owed him a heightened duty of trust, loyalty and dependence, along with a duty to represent him, and that this duty was breached as a result of the attorneys' indifference to plaintiff's interests and liberty concerns. Plaintiff again seeks disgorgement of $24,000 in "actual" damages, $30,000 in "compensatory" damages, and treble, exemplary, and punitive damages for wilful and reckless conduct. Again, this claim on its face does not

6

constitute a claim for an amount greater than that which might be recovered under one damages theory or the other, but not both. The maximum amount that plaintiff would be entitled to recover for mere breach of fiduciary duty does not exceed $35,268.88, an amount insufficient to establish federal jurisdiction.

**Deprivation of Honest Services.** Plaintiff has alleged a fourth cause of action which he entitles "Deprivation of Honest Services," apparently based upon defendants' use of the U.S. Mail, the Internet, and wire communications to induce plaintiff to enter into a contract. Defendant contends that no such cause of action is recognized under Minnesota law and there is no private cause of action for criminal violations of federal mail and wire fraud statutes. Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999). Plaintiff responds with the assertion that facts exist to support a cause of action for a Racketeer Influenced and Corrupt Organizations (RICO) violation, and that he should be permitted to file an amended complaint alleging violation of the civil RICO statute based upon mail/wire fraud because the "predicate acts" element is satisfied by evidence that defendants have defrauded other clients.

Whatever basis plaintiff may assert to justify a claim for "deprivation of honest services," the practical reality is that there is no such cause of action under Minnesota law and he has no private cause of action for violation of federal mail and wire fraud statutes. Id. Furthermore, to establish a violation of 18 U.S.C. § 1962(c) (RICO) a plaintiff must demonstrate: (1) the existence of an enterprise; (2) the defendants' association with the enterprise; (3) defendants' participation in predicate acts of racketeering; and (4) that defendants' actions constitute a pattern of racketeering activity. Id. at 406 (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285

(1985)).  Plaintiff has made not made a showing that demonstrates the existence of an enterprise or defendants' association with such enterprise, and he has likewise not shown that the asserted predicate acts are related to one another or "amount to or pose a threat of continued criminal activity."  Id. at 406 (citing United HealthCare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 571 (8th Cir. 1996).  Indeed, plaintiff offers no evidence to suggest that defendants were engaged in interrelated predicate acts as opposed to separate, isolated events.  Under these circumstances there is no need to entertain a request to amend to allege a RICO claim.  Wisdom, 167 F.3d at 409.  Finally, and particularly important in regards to the present motion to dismiss on jurisdiction grounds, plaintiff has presented no evidence or justification for damages in excess of $35,268.88 with respect to this claim and he has again failed to satisfy the amount in controversy requirement.

**Intentional Infliction of Emotional Distress.**  Plaintiff's fifth cause of action alleges intentional infliction of emotional distress.  The complaint generally alleges malice and lack of regard for plaintiff's rights and deliberate indifference to his physical and emotional well-being.  To establish a prima facie case of intentional infliction of emotional distress, plaintiff must show that 1) the employees' conduct was extreme and outrageous; 2) the conduct was intentional and reckless; 3) it caused plaintiff emotional distress; and 4) the distress was severe.  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983).  The use of this tort is sharply limited to cases involving particularly egregious facts.  Id. at 439.  Indeed, the conduct required to sustain this action must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  Schibursky v. IBM, 820 F.Supp. 1169, 1183 (D. Minn. 1993)(citing Hubbard at 438-39).  The requisite severe emotional distress must be "so severe that no reasonable person could be expected to

endure it." Schibursky at 1183  Thus, a high threshold standard of proof is required to avoid dismissal of this claim. Hubbard at 438-39.

Plaintiff acknowledges the burden imposed under Hubbard and contends that a lawyer's theft of funds, particularly under the circumstance in this case, is sufficient to meet that heavy burden.  Alternatively, he argues that the matter cannot be decided before additional discovery is conducted, or that he again should be permitted to amend the complaint.

Federal Rule of Civil Procedure 12(b)(6) provides that a pleader may assert a defense of failure to state a claim upon which relief can be granted by motion.  On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the court should liberally construe a pro se complaint and should not dismiss claims "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief."  Holloway v. Lockhart, 792 F.2d 760, 761-62 (8th Cir. 1986)(citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02 (1957).  The reviewing court must take all well pleaded allegations as true and in the light most favorable to plaintiff. St. Croix Waterway Assen v. Meyer, 178 F.3d 515, 519 (8th Cir. 1999).  In addition, the court must accord reasonable inferences in favor of the non-moving party.  Holloway at 761-62 (citing Conley, 78 S.Ct. at 101-02).  However, the court is not required to accept the legal conclusions drawn by the pleader from those facts, Thompson v. Olsten Kimberly Qualitycare, Inc., 980 F.Supp. 1035, 1037 (D. Minn. 1997), and a plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion.  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).  Pro se pleadings are held to a less stringent standard than attorney drafted pleadings, Haines v. Kerner, 404 U.S. 519, 520-21, 92S.Ct. 594, 596 (1972).  Nonetheless, the plaintiff still must present evidence to defeat a properly

supported motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

Under typical procedural circumstances a motion to dismiss an emotional distress claim might await summary judgment. However, both the complaint in this instance and the plaintiff's defense of the claim in his opposition memorandum are glaring in their failure to put forth evidence of extreme or outrageous conduct, or conduct that is unendurable, is utterly intolerable in civilized society or is beyond the bounds of decency. Moreover, plaintiff has not even described personal severe emotional damages which could easily be alleged in the absence of discovery. Plaintiff has merely echoed elements of the cause of action, and he has not been particularly thorough or effective in that regard. Considering the evidence and the description of events thus far been presented by plaintiff, and even accepting the truth of the ultimate fact claims, the court cannot conclude that a reasonable person would believe that plaintiff was made to experience conduct by the defendants that was so atrocious that it passes the bounds of decency and would be utterly intolerable in a civilized society or begins to approach the magnitude of atrocious and intolerable. Under the circumstances presented here the court concludes that it is beyond doubt that the plaintiff can prove no set of facts to support of a claim for intentional infliction of emotional distress which would entitle him to relief. Holloway v. Lockhart, 792 F.2d 760, 761-62. Consequently, as a matter of law plaintiff cannot establish he has suffered emotional distress damages that satisfy the $75,000 amount in controversy limit.

**Treble Damages.** Plaintiff asserts a claim for treble damages with respect to each of the five alleged causes of action, but the complaint does not allege a specific legal basis for treble damages. Minnesota Statutes §§ 481.07 and 481.071 allow treble damages for deceit, collusion or

misconduct by attorneys, but such misconduct must have occurred in the context of the action or judicial proceedings which are pending before the court. Baker v. Ploetz, 616 N.W. 2d 263 (Minn. 2000). The alleged improper conduct in this instance arguably occurred in the context of plaintiff's criminal appeal, but clearly did not occur in the context of the presently pending damages suit, and the statutes therefore do not provide a legal basis for trebling the damages alleged in this matter. Baker v. Ploetz, 616 N.W. 2d at 271 (citing New York cases interpreting identical language contained in New York's Judiciary Law §487). Consequently, the amount in controversy cannot be determined through trebling of compensatory damages and federal jurisdiction cannot be established in that manner.

**Punitive Damages under Minnesota Statutes.** Plaintiff generally alleges punitive damages with respect to each claim in the complaint. The proof and pleading requirements for a punitive damages claim under Minnesota law are provided at Minn. Stat. §§ 549.191 and 549.20. Defendants contend that as a matter of law Mr. Hull cannot establish jurisdiction based upon punitive damages in light of the heavy burden imposed under Minnesota law which allows amendment to allege a punitive damages claim only upon a showing of clear and convincing evidence of deliberate disregard for the plaintiff's rights. Plaintiff insists that he should be permitted to conduct discovery and thereafter move to amend the complaint to allege punitive damages to satisfy the $75,000 amount in controversy.

Punitive damages are properly considered in calculating the amount in controversy for federal jurisdiction purposes. Krahn v. Cross Country Bank, 2003 WL 21005295 (D.Minn.)(citing Larkin v. Brown 41 F.3d 387, 388-89 (8th Cir. 1994)). Typically, a pleading that alleges the jurisdictional amount in good faith is sufficient to establish jurisdiction, but dismissal is appropriate if it appear to a legal certainty the claim is actually for a lesser amount. Larkin at 388 (citing additional

11

cases).  The existence of the required amount in controversy must be supported by competent proof, id. (citing Esler v. Northrop Corp., 86 F.R.D. 20, 28 (W.D. Mo. 1979), and when considering the amount in controversy, "a claim for punitive damage is to be given closer scrutiny, and the trial judge is accorded greater discretion, than a claim for actual damages."  Larkin , 41 F.3d at 389 (citing Zahn v. International Paper Co., 469 F.2d 1033, 1034 n.1 (2nd Cir. 1972)(aff'd, 414 U.S. 291, 94 S.Ct. 505 (1973)).

The court finds that plaintiff has not put forth sufficient factual support to warrant punitive damages here and the court further concludes that the plaintiff has not stated an underlying cause of action that would justify an award of punitive damages in addition to compensatory damages.  Furthermore, plaintiff presents no concrete evidence to support an particular amount of punitive damages in this matter and the claim for punitive damages is therefore entirely speculative with respect to both entitlement and amount.  Under these circumstances the plaintiff fails to show that an amount exceeding $75,000 is in controversy in this case and federal jurisdiction is absent.

Based upon its review of the all the files and records, and in consideration of the memorandums, affidavits and exhibits submitted by the parties, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss be **granted** [Docket No. 4];

2. Plaintiff's motion in opposition to defendants' motion to dismiss be **denied as moot** [Docket No. 9]; and

3. Plaintiff's motion to amend the complaint be denied. [Docket No. 24]

Dated:     December 8, 2005

    s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

    Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before December 23, 2005.